UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Kurt Buckner,** | ) | **CASE NO. 1: 11 CV 2144** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Edith Gilliland, and Randy J. Parker,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

This is a diversity tort action brought by Plaintiff Kurt Buckner against Defendants Edith Gilliland and Randy J. Parker. Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint and Amended Complaint. (Doc. 9).[1] For the reasons stated below, defendants' motion to dismiss is denied as to plaintiff's first and second claims for relief and granted as to plaintiff's third claim for relief.

**Facts**

Plaintiff alleges the following facts. Plaintiff resides in Alamance County, North

---

[1] In that plaintiff filed an Amended Complaint, plaintiff's original complaint is moot. Therefore, plaintiff's motion to dismiss will be considered only as to the allegations in the Amended Complaint.

Carolina. From approximately 2007 through November 30, 2010, plaintiff was employed by Family Life Counseling and Psychiatric Services (hereinafter Family Life). At times relevant to the events in the complaint, plaintiff served as a supervisor for Family Life's multisystemic therapy program (MST program) and as a Mental Health Liaison Interventionist for Richland County Children Services (RCCS). At the time plaintiff served as Family Life's MST supervisor, "most if not all of [Family Life's] MST cases involved RCCS youths and /or their families." (Am Complt., ¶ 10.) During the time of his employment with Family Life, the majority of plaintiff's "job responsibilities concerned youths and families involved with RCCS as well as on-site assessments at RCCS." (*Id.* at ¶ 11.)

Defendant Edith Gilliland is employed by RCCS. Defendant Randy J. Parker is the Executive Director of RCCS.

On the morning of October 14, 2010, while plaintiff was in the parking lot of RCCS, he observed Gilliland drive into the lot in her jeep. Plaintiff parked his vehicle next to Gilliland's "with the intention of speaking to her about a case in which she had presented inaccurate information to the Juvenile Court." (*Id*. at ¶ 15.) Plaintiff alleges that he identified himself to Gilliland and told her that he wanted to speak with her about the "Jane Doe" case. Gilliland told plaintiff she felt it odd that he was approaching her in the parking lot about the matter and she felt that plaintiff was stalking her. Plaintiff immediately ended the encounter and drove away. (*Id*. at ¶¶ 16-18.)

After the encounter, Gilliland allegedly reported to RCCS that plaintiff had "blocked" her in the parting lot. Shortly thereafter, RCCS sent a fax to Family Life stating that plaintiff was not welcome at the RCCS building and that he would immediately be removed from the

2

cases on which he was working with RCCS families.  Parker allegedly made this decision to prohibit plaintiff from entering the RCCS building and working on RCCS cases as a result of Gilliland's statement that plaintiff had "blocked" her in.  However, plaintiff alleges that Gilliland's statement was false.  He alleges that plaintiff did not block Gilliland in the parking lot as she stated.  Plaintiff alleges that as a result of defendants' conduct toward him, he was "compelled" to resign his position at Family Services.  (*Id*. at ¶¶ 19-23.)

Arising from these facts, plaintiff alleges three claims for relief.  The first claim for relief is for defamation against Gilliland.  Plaintiff alleges that Gilliland's statement to RCCS that plaintiff had "blocked" her in "was false or was made with reckless disregard as to whether it was false or not."  (*Id*., ¶ 22.)  Plaintiff alleges that Parker made the decision to prohibit him from entering the RCCS building and working on cases with RCCS clients as a result of Gilliland's false statement and, as a direct and proximate result of Gilliland's publication of the false statement, plaintiff suffered a loss of past and future earnings, emotional distress, and damage to his reputation.  Plaintiff alleges that Gilliland's actions "were wilful, malicious, and in reckless disregard of [his] legal rights."  (*Id.* at ¶ 25.)

The second claim for relief is for "intentional interference" against Parker.  Plaintiff alleges that prior to his encounter with Gilliland, plaintiff "had brought to RCCS's attention that Defendant Gilliland had inaccurately represented during a hearing in the Richland County Juvenile Court that a 'Jane Doe's' mother had failed to cooperate with [an] MST referral" when, in fact, no MST referral had been made at the time of the hearing.  (*Id.* at ¶¶ 27, 28.)  Plaintiff informed RCCS that he intended to speak with the "Jane Doe's" attorney regarding this issue after plaintiff learned that RCCS refused to take steps to correct the

juvenile court record as to Gilliland's inaccurate representation. (*Id.* at ¶ 29.) Plaintiff alleges that Parker "used" Gilliland's "defamatory statement" about him "as an excuse to get rid of [him] because of [his] pursuit of the matter involving Defendant Gilliland's representation in Juvenile Court." (*Id.* at ¶ 30.) Plaintiff alleges that "Parker intentionally interfered with [his] employment with [Family Services]" in this manner. (*Id.* at ¶ 31.)

Plaintiff's third claim for relief alleges "negligent investigation" by Parker. Plaintiff alleges that prior to sending the fax communication to Family Services (stating that plaintiff was no longer welcome in its building and would be taken off RCCS cases), no one at RCCS inquired of plaintiff or his employer to determine the truth of Gilliland's statement or her rendition of the events. Plaintiff alleges that Parker "had a duty to use reasonable care to investigate whether or not Defendant Gilliland's statement[s] respecting her encounter with [plaintiff] were true" and that Parker breached this duty in negligently failing to conduct a "proper investigation." (*Id.* at ¶ 40.) Plaintiff alleges Parker's actions were "willful, malicious, and in reckless disregard for Plaintiff's legal rights." (*Id.* at ¶ 42.)

**Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. In order to survive a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Ass'n of Cleveland Firefighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). That is, the complaint must contain sufficient factual material to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**Discussion**

Gilliland and Parker argue that all of plaintiff's claims fail because they are entitled to immunity under Ohio Revised Code § 2744.03(A)(6), which affords employees of a political subdivision immunity from liability in tort unless:  "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code."  Defendants argue that plaintiff has not pled sufficient facts to establish that defendants' actions were with malicious purpose, in bad faith, or taken in a wanton or reckless manner such that statutory immunity would not exist.

Defendants argue that plaintiff's claims are insufficient for additional reasons.  They argue that plaintiff's defamation claim fails because Gilliland's communication to her employer is also protected by a qualified privileged applicable to defamation defendants. Defendants argue that even if Gilliland falsely told Parker that plaintiff had "blocked" her in, plaintiff's complaint does not allege sufficient facts to support his assertion that Gilliland acted willfully, maliciously, and recklessly so as to overcome a qualified privilege.

Likewise, defendants contend that Parker is entitled to a qualified privilege and that

plaintiff "has failed to plead any facts to suggest that Defendant Parker acted with actual malice." Defendants argue the intentional inference claim against Parker also fails because plaintiff has not pled sufficient facts to suggest that Parker knew of an employment contract between plaintiff and Family Life, that Parker sought to procure a breach of the employment relationship between plaintiff and Family Life, or that Parker had the ability to influence that relationship. (Def. Br. at 10.)

Finally, defendants contend plaintiff's third claim for relief fails because Ohio does not recognize a tort of "negligent investigation" and, even if such an action existed under Ohio law, Parker has statutory immunity under Ohio Revised Code § 2744.03(A)(6).

Plaintiff disputes that his claims are barred by statutory immunity and qualified privilege because he has alleged that defendants acted intentionally, willfully, and maliciously. In particular, he argues that it can be inferred from the facts alleged that Gilliland made a false statement about him to Parker because "she wanted to protect herself with respect to [plaintiff's] pursuit of the matter respecting the Jane Doe Case." (Opp. at 4.) Plaintiff contends he has sufficiently alleged a claim for intentional inference against Parker in that "Mr. Parker clearly knew of [plaintiff's] employment with [Family Services] and his responsibilities concerning RCCS'[s] children and families since he had RCCS send a fax directly to [Family Services] forbidding [plaintiff] entry to RCCS and involvement with its clients." In addition, "Mr. Parker purposely wanted to get rid of [plaintiff] для continuing in his pursuit of the matter respecting Ms. Gilliland's misrepresentation to the Richland County Juvenile Court." (Opp. at 10.)

Although plaintiff does not cite authority in his opposition brief acknowledging the

existence of a claim for negligent investigation under Ohio law, plaintiff argues that "a negligent investigation claim makes sense given the relationship between RCCS, [plaintiff], and [Family Services], and the foreseeability of the harm that would result from [Parker's] failure to properly investigate the matter." (Opp. at 13.) Therefore, he argues, "[t]here is no reason under such circumstances why Plaintiff may not proceed on his claim for negligence." *Id*.

Under Ohio law, defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame, or disgrace, or affects him adversely in his trade or business. A cause of action for defamation consists of five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault or at least negligence on the part of the defendant; and (5) that was either defamatory *per se* or caused special harm to the plaintiff." *Konica Minolta Business Solutions USA, Inc. v. Allied Office*, 724 F. Supp.2d 861, 868 (S.D. Ohio 2010).

The elements of claim for tortious interference with an employment relationship under Ohio law are: (1) the existence of an employment relationship; (2) the defendant was aware of this relationship; (3) the defendant intentionally interfered with this relationship; (4) and the plaintiff was injured as a proximate result of the defendant's acts. *McNett v. Worthington*, No. 15-11-05, 2011 WL 4790759, at * 3 (Ohio App. 2011).

If a plaintiff establishes a *prima facie* case of defamation, the defendant may invoke a conditional or qualified privilege. (*Id.*) Further, "[t]he defense of conditional or qualified privilege applies to all the plaintiff's derivative claims, such as tortious interference with an employment relationship, as well as the defamation claim." *Id*. The essential elements of a

7

qualified privilege are "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only."  (*Id.*, *quoting Hahn v. Kotten*, 43 Ohio St. 237, 246 (1975).)  "If the communication is privileged, the plaintiff may not recover unless he/she demonstrates that the defendant made the statement(s) with actual malice, such as:  ill will, spite, grudge, or some ulterior motive." (*Id.*, *citing DeAngelo v. W.T. Grant Co.*, 111 N.E.2d 773, 776 (1952).)

Defendants' motion to dismiss is denied as to plaintiff's first two claims for relief. The Amended Complaint sufficiently alleges a claim for defamation against Gilliland in that plaintiff alleges Gilliland made a false and defamatory statement about him to Parker (namely, Gilliland falsely stated to Parker that plaintiff had "blocked" her in the parking lot which could reasonably suggest that Gilliland accused plaintiff of stalking her).  In addition, plaintiff has alleged that this statement resulted in plaintiff being compelled to resign from his position at Family Services.  Contrary to defendants' position, plaintiff's allegations are sufficient to overcome any privilege that may apply to Gilliland's statement on a motion to dismiss in that plaintiff alleges Gilliland made the false statement after plaintiff indicated he was going to pursue a false representation Gilliland made in the "Jane Doe" case.  At the pleadings stage, this is sufficient to demonstrate that Gilliland did not make the statement in good faith but instead made it intentionally and maliciously in order to retaliate against plaintiff for pursuing the "Jane Doe" matter and/or to protect herself from plaintiff's pursuit of the matter.  Accordingly, dismissal of the defamation claim is not warranted on the basis of either statutory immunity or qualified privilege.

Likewise, plaintiff alleges sufficient facts to withstand dismissal on his claim against Parker for intentional interference with plaintiff's employment relationship with Family Services.  Plaintiff's allegations (in particular, his allegations that Parker "used" Gilliland's "defamatory statement" about him "as an excuse to get rid" of him because of his pursuit of the juvenile court matter) are sufficient to suggest that Parker knew of the employment relationship between plaintiff and Family Services and that Parker intended to interfere with that relationship when he sent the fax to Family Services.  These allegations are also sufficient to withstand dismissal on the basis of immunity and privilege.  Plaintiff's allegations that Parker communicated with Family Services in order to "get rid of" plaintiff for raising concerns about Gilliland's representation in the "Jane Doe" matter are sufficient to support a conclusion that Parker acted with "actual malice, such as:  ill will, spite, grudge, or some ulterior motive."

Defendants' motion to dismiss is granted however as to plaintiff's third claim for relief.  Defendants cite two Ohio Court of Appeals cases indicating that Ohio law does not recognize a cause of action for "negligent investigation of an employee's misconduct."  *See, e.g., Lamson v. Firestone Tire & Rubber Company*, Case No. 14692, 1991 WL 35098, at *3 (Ohio App. 1991) ("Perry urges this court to adopt the previously unrecognized tort of negligent investigation of an employee's misconduct.  We decline to do so.  The trial court properly granted appellees' summary judgment on this claim for the reason that no such cause of action exists in Ohio law.").  *See also Stallworth v. Greater Cleveland Regional Transit Authority*, Case No. 73533, 1998 WL 774987, at *4 (Ohio App. 1998) ("In [*Lamson*, 1991 WL 35098], the plaintiff alleged a cause of action for 'negligent investigation' against his

former employer following his termination.  The court declined to adopt the unrecognized tort of negligent investigation.  As the tort has not been previously recognized in Ohio, we decline to so adopt a cause of action.").  Plaintiff does not cite any case in his opposition holding that the tort exists.[2]  In addition, plaintiff attempts to distinguish the cases defendants cite on the ground that they arose in "the employer-employee context."  Plaintiff suggests that a negligent investigation claim should exist here, where the plaintiff is not an employee of Parker but a third party.  However, plaintiff has not cited any case holding that a negligent investigation claim exists in this context either.

In sum, dismissal of plaintiff's third claim for relief is appropriate pursuant to *Lamson* and *Stallworth*.

**Conclusion**

For the reasons discussed above, defendants' motion to dismiss is denied as to plaintiff's first and second claims for relief (defamation against Gilliland and intentional interference against Parker) and granted as to plaintiff's third claim for relief (negligent investigation against Parker).

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 2/10/12      United States District Judge

---

[2] *Dennis v. Coventry Local School Dist. Bd. of Ed.*, Case No. 22913, 2006 WL 1540840 (Ohio App. 2006), cited by plaintiff, did not specifically rule that a cause of action for "negligent misrepresentation" exists but upheld summary judgment in an employer's favor on such a claim on the basis that the plaintiff did not meet his burden on appeal of articulating a factual basis for the claim.